# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| PATRICIA JO LEMASTER, | ) | |
| TERRI JO LEMASTER, and | ) | |
| PEGGY MCCOMAS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:08-1101 |
| | ) | Judge Trauger |
| ALTERNATIVE HEALTHCARE | ) | |
| SOLUTIONS, INC., | ) | |
| MICKEY RUGGIERO, GIA RUGGIERO, | ) | |
| VOLUNTEER STAFFING, INC., | ) | |
| HOME HEALTH CARE OF MIDDLE | ) | |
| TENNESSEE, LLC, and | ) | |
| BALEY ALLRED, III, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by the plaintiffs
(Docket No. 61), the response filed by defendants Volunteer Staffing, Inc. and Bailey Allred III
(Docket No. 67), the response filed by defendant Home Health Care of Middle Tennessee LLC
(Docket No. 68), and the plaintiffs' reply (Docket No. 70). For the reasons discussed below, the
plaintiffs' motion will be granted in part and denied in part.

## FACTS

The defendants are all involved in an arrangement that provides nurses for long-term
24-hour in-home care, known as "private duty" nursing care.[1]  Defendant Alternative Healthcare

---

[1] Unless otherwise noted, the facts are drawn from the plaintiff's Statement of
Undisputed Material Facts (Docket No. 63), the defendants' responses (Docket Nos. 67-68), and
related declarations. Although facts are drawn from submissions made by both parties, on a

1

Solutions, Inc. ("AHS") is a nursing and domestic staffing company that recruits nurses and refers them to home healthcare agencies and nursing homes. Together, defendants Mickey and Gia Ruggiero own 100% of AHS. Defendant Home Health Care of Middle Tennessee, LLC ("HHC") provides home healthcare to patients throughout Tennessee. HHC contracted with AHS to provide Licensed Practical Nurses ("LPNs") for some of HHC's private duty patients. AHS billed HHC for the total number of hours worked by the nurses it provided over each billing period. AHS then contracted with Volunteer Staffing, Inc. ("VSI") to process its payroll and pay the nurses' wages. Defendant Baley Allred, III and his wife own 50% of VSI, and Allred also owns 50% of HHC.

The plaintiffs are LPNs who worked under this arrangement for the defendants. They were hired at different times in 2006, and they all stopped working for the defendants in March or April 2007. AHS was in charge of the hiring process, but it had to meet certain requirements set out by HHC. HHC required AHS, among other things, to have candidates complete job applications, submit references, complete a background check, complete Federal I-9 Authorization to Work forms, submit a copy of a valid nursing license, and submit a copy of a valid social security card. HHC also participated in the hiring process directly with its policy of obtaining various documents from LPN candidates, including a signed receipt of job description, a signed receipt of HHC's Employee Handbook, a signed receipt of HHC's drug policy, and a

motion for summary judgment, the court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009). AHS, Mickey Ruggiero, and Gia Ruggiero did not respond to the plaintiffs' Motion for Summary Judgment. Such failure to respond indicates that those parties do not dispute the facts contained in the plaintiffs' Statement of Undisputed Material Facts. *See* M.D. Tenn. Local R. 56.01(g).

completed competency and pharmacology quiz.

Gia Ruggiero interviewed the plaintiffs for their jobs as LPNs, and Mickey Ruggiero hired them and set their pay rate. In addition to the forms discussed above, the plaintiffs had to fill out Independent Contractor Agreements ("ICAs") with VSI. Gia informed the plaintiffs that they had to complete the ICAs to work for AHS. VSI used the agreements pursuant to advice it received from its attorney. The attorney drafted the ICAs and advised VSI on the use of independent contractors, although she never mentioned the application of the Fair Labor Standards Act to the nurses.

Once hired, the plaintiffs received work assignments from Gia Ruggiero and turned in weekly time sheet forms, provided by HHC, to AHS. AHS was the plaintiffs' point of contact for all aspects of their work. The job involved performing in-home nursing care for HHC patients and documenting the care they provided on "Private Nursing Narrative" forms given to them by HHC. The plaintiffs provided their own stethoscopes and blood pressure cuffs but otherwise did not provide any medical equipment for use at patients' homes. VSI paid the plaintiffs' wages based on the HHC time sheets that they filled out and turned in to AHS.

During this time, the plaintiffs were paid a single hourly rate for all of the hours they worked, including those beyond forty hours per week. A Department of Labor ("DOL") investigation, prompted by a complaint from the plaintiffs, determined that the LPNs, including the plaintiffs, were employees, not independent contractors, and that AHS had violated the Fair Labor Standards Act by not paying them time and one-half for overtime. The DOL ordered AHS to pay back wages to the affected employees, but Mickey Ruggiero refused. The DOL then sent letters to plaintiffs Patricia and Terry LeMaster to inform them that it was not bringing a lawsuit

3

against AHS to force the payment of back wages. (Docket No. 62 Ex. 2 at 40-43.)  However, the letter explained that they could file a lawsuit on their own to recover the back wages.  (*Id.*)

The Ruggieros claimed that the affected employees from the DOL investigation were actually employees of VSI, so the DOL opened an investigation of VSI in January 2008.  It found that VSI had failed to pay overtime to seven of its nearly 400 employees,[2] none of whom included the plaintiffs or any of VSI's nurse independent contractors.  In June 2008, however, the DOL re-opened the investigation and determined that the relationship between AHS and the nurse independent contractors required VSI to pay overtime.  VSI now admits that it was one of the plaintiffs' employers.

The plaintiffs filed this suit against Mickey Ruggiero and AHS on November 14, 2008, alleging that they violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and seeking all unpaid overtime compensation, an equal amount in liquidated damages, and attorneys' fees, costs, and expenses.  The plaintiffs subsequently amended their Complaint to add claims against Gia Ruggiero, VSI, HHC, and Allred, alleging that all of the defendants were joint employers and were thus jointly and severally liable under the FLSA.  (Docket No. 41.)

## ANALYSIS

The plaintiffs have now filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, seeking judgment on all of their claims.

### I.     Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits

---

[2] The DOL determined that this violation was not willful. (Docket No. 67 Ex. 2 at 2.)

4

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

"'[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.    Relevant Statutory Framework

Congress passed the Fair Labor Standards Act in 1938 to ensure a "minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The FLSA requires employers to pay covered employees who work more than 40 hours in one workweek a rate of one and one-half times their regular rate of pay. *Id.* § 207(a)(1). "Employee" is defined as "any individual employed by an employer." *Id.* § 203(e)(1). "'Employees are those who as a matter of economic reality are dependent upon the business to

which they render service.'" *Crouch v. Guardian Angel Nursing, Inc.*, No. 3:07-cv-00541, 2009 U.S. Dist. LEXIS 103832, at *36 (M.D. Tenn. Nov. 4, 2009) (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984)).

The statute defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts have defined employer broadly in light of the remedial purposes of the FLSA, basing the determination more on "economic realities" than on common law concepts of agency. *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991). In *Dole*, the Sixth Circuit held that more than one employer can be held jointly liable for FLSA violations. *Id.* Additionally, "'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Id.* (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)).

Employers in violation of § 207 are liable to affected employees for the amount of unpaid overtime compensation, as well as for an equal amount in liquidated damages, reasonable attorney's fees, and costs for the action. 29 U.S.C § 216(b). Courts can, at their discretion, deny or decrease the liquidated damages award if the employer shows that it acted in good faith and that it "had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." *Id.* § 260.

### III.    Whether the Plaintiffs Were Employees or Independent Contractors

The plaintiffs contend that they were properly classified as "employees," as opposed to independent contractors, under the FLSA, a point that defendants VSI, HHC, and Baley Allred concede. Defendants Alternative Healthcare Solutions, Inc. ("AHS"), Mickey Ruggiero, and Gia

6

Ruggiero, however, did not respond to the plaintiffs' Motion for Summary Judgment. A non-moving party's failure to respond to a motion "'indicates there is no opposition to the motion.'" *Johnson v. Jackson County Sheriff's Dep't*, No. 2:08-0033, 2009 U.S. Dist. LEXIS 33078, at *2 (M.D. Tenn. Apr. 17, 2009) (quoting M.D. Tenn. Local R. 7.01(b)). More specifically, failure to respond to a motion for summary judgment "'shall indicate that the asserted facts are not disputed for the purposes of summary judgment.'" *Id.* (quoting M.D. Tenn. Local R. 56.01(g)).

But the court will not grant the plaintiffs' motion for summary judgment solely on the ground that AHS and the Ruggieros did not respond. *Id.* (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)). The Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure he has discharged his initial burden. . . . The federal rules require the party filing a motion for summary judgment 'always bear the burden of demonstrating the absence of a genuine issue as to a material fact.'

*Stough*, 138 F.3d at 614 (citation omitted); *see also Miller v. Shore Fin. Servs., Inc.*, 141 Fed. Appx. 417, 419 (6th Cir. 2005). Consequently, the court must examine the plaintiffs' evidence to determine whether they have sufficiently shown that they were employees instead of independent contractors. For the reasons discussed below, the plaintiffs have met this burden.

The issue of whether plaintiffs were employees or independent contractors under the FLSA is a question of law appropriate for summary judgment, unless there is "'a genuine issue of fact or conflicting inferences can be drawn from the disputed facts . . . .'" *Wilson v. Guardian Angel Nursing, Inc.*, No. 3:07-0069, 2008 U.S. Dist. LEXIS 59623, at *30 (M.D. Tenn. July 31,

7

2008) (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 750 n.1 (6th Cir. 1992)); *see also Crouch*, 2009 U.S. Dist. LEXIS 103832, at *37.

The Sixth Circuit applies the "economic realities" test, which "'looks to whether the putative employee is economically dependent upon the principal or is instead in business for himself.'" *Crouch*, 2009 U.S. Dist. LEXIS 103832, at *37 (quoting *Lilley*, 958 F.2d at 750). "'This test is a loose formulation, leaving the determination of employment status to case-by-case resolution based on the totality of the circumstances.'" *Id.* (quoting *Lilley*, 958 F.2d at 750 (6th Cir. 1992)). It considers the following factors:

> (1)  the permanency of the relationship between the parties;
>
> (2)  the degree of skill required for the rendering of the services;
>
> (3)  the extent of the worker's investment in equipment or materials for the task;
>
> (4)  the worker's opportunity for profit or loss, depending upon his skill;
>
> (5)  the degree of the alleged employer's right to control the manner in which work is performed; and
>
> (6)  whether the service rendered is an integral part of the alleged employer's business.

*Id.* (citing *Imars v. Contractors Mfg. Servs., Inc.*, No. 97-3543, 1998 U.S. App. LEXIS 21073, at *5 (6th Cir. Aug. 24, 1998)); *see also Brandel*, 736 F.2d at 1117 n.5.

It is important to note that parties' contractual intentions do not control whether a worker is considered an employee for FLSA purposes. Although a contractual arrangement may provide evidence of the economic relationship between parties, "'[t]he FLSA is designed to defeat rather than implement contractual arrangements.'" *Crouch*, 2009 U.S. Dist. LEXIS 103832, at *38

8

(quoting *Imars*, 1998 U.S. App. LEXIS 21073, at \*5).

Two recent Middle District of Tennessee cases dealt with this issue in a very similar factual context. In both *Crouch* and *Wilson*, the court determined that LPNs, working in an arrangement similar to that of the plaintiffs in this case, were employees under the FLSA. The judges in both cases criticized the economic realities test for being too open-ended and easily manipulated, but still considered each factor in reaching their decision. *Crouch*, 2009 U.S. Dist. LEXIS 103832, at \*40-41; *Wilson*, 2008 U.S. Dist. LEXIS 59623, at \*35-36. While the determination in *Crouch* and *Wilson* that LPNs are employees is persuasive, this court still must consider the six factors as they apply to the plaintiffs' specific situation.

### A. The Permanence of the Relationship Between the Parties

A permanent working relationship supports a finding of employee status. The plaintiffs argue that this factor does not weigh heavily on either side because, although the job of LPNs is "somewhat transient," the lack of permanence is intrinsic to the industry rather than reflective of LPNs' own business initiatives. (Docket No. 62 at 8-9.)

*Crouch* supports this argument, 2009 U.S. Dist. LEXIS 103832, at \*42-43 (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060-61 (2d Cir. 1988)), but the plaintiffs in this case actually have a relatively low degree of transience. Even the most transient plaintiff, Patricia Jo LeMaster, worked for the defendants for over six months. In contrast, in *Wilson*, one plaintiff only worked for the defendants for several weeks, 2008 U.S. Dist. LEXIS 59623, at \*38, and in *Superior Care*, 78% percent of the plaintiffs had worked for the defendant for thirteen weeks or fewer. 840 F.2d at 1060-61. These plaintiffs were nevertheless found to be "employees." Thus, the permanence factor leans slightly in favor of an employment relationship.

9

**B.     The Degree of Skill Required of the Plaintiffs**

Although it is undisputed that LPNs are skilled workers, "'skills are not the monopoly of independent contractors.'"  *Wilson*, 2008 U.S. Dist. LEXIS 59623, at *41 (quoting *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1537 (7th Cir. 1987)).  "It is thus essential to ask whether, in the larger picture, LPNs have the skills necessary to locate and manage discrete work projects characteristic of independent contractors, or whether their skills are of the task-specific, specialized kind that form a piece of a larger enterprise, suggesting employee status." *Id.* at *42.

Nothing in the record suggests that the plaintiffs here were capable of finding their own clients.  Rather, they were dependent on the defendants for their work assignments.  Even after the plaintiffs began working at a home, they filled out time sheets and Private Duty Nursing Narratives for the defendants.  This factor clearly supports a finding of employee status.  *See Crouch*, 2009 U.S. Dist. LEXIS 103832, at *50 (determining that LPNs' skills weigh "fairly strongly in favor of finding employee rather than independent contractor status").

**C.     The Extent of the Plaintiffs' Investment in Equipment or Materials**

"The capital investment factor is most significant if it reveals that the worker performs a specialized service that requires a tool or application which he has mastered or that the worker is simply using implements of the [alleged employer] to accomplish the task." *Brandel*, 736 F.2d at 1118-19.  Here, the plaintiffs supplied their own stethoscopes and blood pressure cuffs, but otherwise they did not provide any medical equipment used at the patients' homes.

In *Crouch*, as in this case, the defendants were mainly in the business of staffing and providing nurses to patients in need of private duty nursing care.  2009 U.S. Dist. LEXIS 103832, at *51.  The court noted that, although the defendant staffing businesses did not invest

10

in medical equipment, they had invested heavily in the staffing business itself. *Id.*

Consequently, the court determined that:

> [a]lthough the amount and cost of the equipment placed in the patients' homes for the plaintiffs' use is not considerable, it is nonetheless clear that Defendants' investment in the business of placing LPNs substantially outweighs Plaintiffs' investment in the tools of their trade. To the extent this factor is entitled to any weight at all, it would weigh slightly in favor of finding that Plaintiffs are employees rather than independent contractors.

*Id.* at *52.

The court agrees with *Crouch*'s reasoning. This case involves analogous investments by almost identically situated parties. Consequently, this factor weighs slightly in favor of finding that the plaintiffs are employees.

### D.    The Plaintiffs' Opportunity for Profit or Loss

When analyzing the profit or loss factor, the key question "'is whether the Plaintiffs' earnings were tied to their performance once they accepted work.'" *Id.* (quoting *Wilson*, 2008 U.S. Dist. LEXIS 59623, at *45). "'It is the mark of an independent contractor that a stake in the venture provides both carrot and stick, such that planning, efficiency and skill are rewarded above and beyond the initial contract.'" *Id.* (quoting *Wilson*, 2008 U.S. Dist. LEXIS 59623, at *45); *see also Imars*, 1998 U.S. App. LEXIS 21073, at *17-18; *Brandel*, 736 F.2d at 1119.

Here, all of the plaintiffs were compensated at an hourly rate for their work as LPNs. There is no evidence suggesting that the plaintiffs' earnings were at all tied to performance, or that they had any opportunity for profit or loss beyond their set hourly wage. Rather, the plaintiffs' pay rate was determined by Mickey Ruggiero in advance of their work. This factor falls squarely on the side of employee status for the plaintiffs. *Crouch*, U.S. Dist. LEXIS

11

103832, at *53-54; *Wilson*, 2008 U.S. Dist. LEXIS 59623, at *46-47; *see also Superior Care*, 840 F.2d at 1059 (concluding that plaintiffs' lack of opportunity for profit or loss "weighed heavily in favor of the . . . conclusion that the nurses [were] employees").

### E. The Degree of the Defendants' Control Over Details of Plaintiffs' Work

The record in this case does not reveal many details of the plaintiffs' day-to-day interactions with the defendants while working as LPNs. However, "[a]n employer does not need to look over his workers' shoulders every day in order to exercise control." *Superior Care*, 840 F.2d at 1059. In *Crouch*, the court emphasized the control over LPNs mandated by Tennessee law. U.S. Dist. LEXIS 103832, at *55-56. State statutes require LPNs to work "under the direction of a licensed physician . . . or professional registered nurse." Tenn. Code Ann. § 63-7-108.

Even though none of the defendants in this case is a physician or professional nurse, the Ruggieros did exercise control over the plaintiffs' work schedules, and the plaintiffs were required to fill out and turn in "Private Duty Nursing Narrative" forms to AHS. In light of these facts, the court will weigh this factor slightly on the side of employee status.

### F. Whether the Plaintiffs' Service is an Integral Part of the Defendants' Businesses

AHS recruits nurses to refer to staffing firms or home healthcare agencies. LPNs like the plaintiffs are central to this arrangement. The record does not include many details about the nature of AHS's business model, but it seems fair to conclude that nurses are integral to a company in the business of recruiting nurses. *Crouch* and *Wilson* also weighed this factor in favor of finding employee status. *Crouch*, U.S. Dist. LEXIS 103832, at *60-61; *Wilson*, 2008 U.S. Dist. LEXIS 59623, at *51. Given the paucity of information about AHS, the court will not

12

give much weight to this factor.

**G.     Other Factors**

In *Brandel*, the Sixth Circuit also examined "whether the workers were economically dependent upon the business for which they were laboring."  736 F.2d at 1120.  The court considered several factors to answer that question, including (1) whether the worker was subjected to long hours at low wages; (2) whether similar work was available elsewhere; and (3) whether the alleged employer unilaterally controlled the rate of pay.  *Id.*  Here, as in *Crouch*, "these issues have been taken into consideration in the context of considering the other factors above, and . . . they do not offer much additional insight into the question of whether Plaintiffs are employees or independent contractors."  *Crouch*, 2009 U.S. Dist. LEXIS 103832, at *62.

In sum, the plaintiffs have sufficiently shown that there is no genuine factual dispute as to whether they were economically dependent upon the defendants.  Not a single factor out of the six-factor economic realities test favors a finding of independent contractor status, and several factors strongly favor employee status.  Accordingly, the court concludes that the plaintiffs are employees under the FLSA.

**IV.     Whether the Defendants are Jointly and Severally Liable as Employers**

The question now becomes whether any or all of the defendants were "employers" of the employee plaintiffs.  Whether a party is an employer under the FLSA is an issue appropriate for summary judgment.  *See Larson v. Leading Edge Outsourcing, Inc.*, No. 3:08-00446, 2010 U.S. Dist. LEXIS 30129, at *21-22 (M.D. Tenn. Mar. 29, 2010) (citing *Brandel*, 736 F.2d at 1116). Because each defendant company is related differently to the plaintiffs and presents different arguments, the court will consider each defendant company and its corresponding defendant

13

owner(s) in turn.

The Plaintiffs claim that, as joint employers, all of the defendants are jointly and severally liable to them. As an initial point, the court agrees that, to the extent any of the defendants is liable, they are all considered joint employers for FLSA purposes. DOL regulations provide:

> [I]f . . . employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions . . . .

29 C.F.R. § 791.2(a).

Here, the defendants are not completely disassociated from each other. They all played different roles in an arrangement to provide the same service-private duty nursing-to patients, and they all used the plaintiffs to provide that service. Furthermore, the plaintiffs' work simultaneously benefitted all of the defendants, because each defendant acted directly or indirectly in the interest of the others by playing some role in providing private-duty nursing care. *See id.* § 791.2(b). Thus, any liability incurred by the defendants is joint and several.

### A. Alternative Healthcare Solutions, Inc., Mickey Ruggiero and Gia Ruggiero

As previously mentioned, defendants Alternative Healthcare Solutions, Inc. ("AHS"), Mickey Ruggiero, and Gia Ruggiero did not respond to the plaintiffs' Motion for Summary Judgment. Again, the court will not automatically grant the plaintiffs' Motion for Summary Judgment but will instead weigh the evidence to determine whether the plaintiffs have discharged their burden of demonstrating an absence of a genuine issue of material fact. *See*

14

*Miller*, 141 Fed. Appx. at 419; *Stough*, 138 F.3d at 614.

The plaintiffs have, in fact, produced enough evidence to satisfy the "economic realities" test, establishing that AHS was an employer and is thus liable for unpaid overtime wages. Sixth Circuit cases indicate that the economic realities test "considers the alleged employer's power to hire and fire the person, supervision and control of schedules and conditions of employment, determination of the rate and method of payment and the maintenance of employment records." *Larson*, 2010 U.S. Dist. LEXIS 30129, at *22 (citing *U.S. Dept. of Labor v. Cole Enters.*, 62 F.3d 775, 778 (6th Cir. 1991)). Other circuits have explicitly adopted such factors. *See Williams v. Henagan*, 595 F.3d 610, 620-21 (5th Cir. 2010) ("[T]he four standard factors under the economic reality test . . . [are] whether the putative employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."); *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (same).

The plaintiffs provide uncontroverted evidence that AHS, through Mickey and Gia Ruggiero, interviewed, hired, and set the plaintiffs' wages. Additionally, AHS gave the plaintiffs their work assignments, collected their time sheets, and maintained personnel files on them. Given the factors discussed above, this undeniably establishes that AHS was the plaintiffs' employer under the FLSA.

Mickey and Gia Ruggiero are also liable as employers because "[o]ne who is the chief executive officer of a corporation, has a significant ownership interest in it, controls significant functions of the business, and determines salaries and makes hiring decisions has operational

15

control and qualifies as an 'employer' for the purposes of FLSA."  *Cole Enters.*, 62 F.3d at 778;

*see also Greene v. Westwood Prop. Mgmt., LLC*, No. 3:07-0955, 2009 U.S. Dist. LEXIS 40388,

at *36-38 (M.D. Tenn. May 12, 2009).  The plaintiffs' evidence shows that, between themselves,

Mickey and Gia own 100% of the company, Gia interviewed the plaintiffs, and Mickey hired the

plaintiffs and determined their rate of pay.

Thus, AHS and Mickey and Gia Ruggiero are jointly and severally liable to the plaintiffs

for their unpaid overtime wages.  Because no party has put forth any evidence suggesting the

violation was in good faith, they are also jointly and severally liable for liquidated damages in an

amount equal to the unpaid wages, reasonable attorneys' fees, and costs for the action.

### B.    Volunteer Services, Inc. and Baley Allred

Defendants VSI and Allred concede that they were the plaintiffs' employers, but they

argue that a two-year statute of limitations should apply to them because they did not act

willfully in violating the FLSA.  (Docket No. 67 at 3-5.)  The FLSA's statute of limitations is

three years from the time the cause of action accrued if the violation was willful, but only two

years if the violation was not willful.  29 U.S.C. § 255.  A violation is considered willful if the

employer "knew or recklessly disregarded whether its conduct was prohibited by the FLSA."

*Guzman v. Green Pastures Farm, Inc.*, No. 3:08-cv-00957, 2009 U.S. Dist. LEXIS 63632, at *3

(M.D. Tenn. June 4, 2009) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130-33

(1988)).

Here, the plaintiffs first asserted claims against VSI and Allred in their First Amended

Complaint in July 2009. If the alleged violation was non-willful, these claims would be

16

time-barred, because the last violation accrued in April 2007.[3]

The plaintiffs bear the burden of proving that VSI and Allred "'knew or showed reckless disregard for the matter of whether [their] conduct was prohibited by statute.'" *Wilson*, 2008 U.S. Dist. LEXIS 59623, at *61 (quoting *Richland Shoe*, 486 U.S. at 133). This burden can be satisfied "by showing that the 'employer disregarded the very 'possibility' that it was violating the statute.'" *Id.* at *62 (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908-09 (9th Cir. 2003)). However, the standard requires more than just showing "that an employer knew that the FLSA was in the picture." *Richland Shoe*, 486 U.S. at 132.

The plaintiffs have not met this burden. They argue that the mere fact that they were not paid overtime is sufficient to establish willfulness as a matter of law. (Docket No. 70 at 4.) This argument lacks legal support and defies logic. Under such reasoning, there would be no reason to have a tiered statute of limitations. In *Richland Shoe*, the Supreme Court stated: "The fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." 486 U.S. at 132.

In an attempt to support their argument, the plaintiffs cite several cases, none of which are from the Sixth Circuit. First, they point to *Reich v. Waldbaum, Inc.*, 52 F.3d 35 (2d Cir. 1995), but the court there conducted a lengthy analysis of the relevant facts and concluded that the employer's violation was willful. If, as the plaintiffs suggest, this case stood for a per se finding of willfulness when the FLSA was violated, then the court would not have embarked

---

[3] The plaintiffs do not argue that their First Amended Complaint should relate back to the date of their initial Complaint for statute of limitations purposes.

17

upon such careful analysis.  In *Reich*, the employer claimed that its violation of the FLSA was not willful because it thought that its hourly employees fell into the executive exception of the Act.  *Id.* at 39.  The court found willfulness because the DOL had investigated the employer in the past and "the law was clear at all relevant times that employees compensated on an hourly basis are subject to the FLSA . . . ."  *Id.* at 41.

The plaintiffs also cite *Brown v. L & P Industries, LLC*, No. 5:04CV0379 JLH, 2005 U.S. Dist. LEXIS 39920 (E.D. Ark. Dec. 21, 2005), and *Hardrick v. Airway Freight Systems, Inc.*, 63 F. Supp. 2d 898 (N.D. Ill. 1999).  Both of these cases, however, involved facts that led each judge to conclude that no reasonable jury could find that the employers' violations of the FLSA were not willful.[4]  *L & P Indus., LLC*, 2005 U.S. Dist. LEXIS 39920, at \*33-34 (finding willfulness as a matter of law when the employer did not research the FLSA's requirements even when made aware of possible violation); *Hardrick*, 63 F. Supp. 2d at 904 (same, because employer knew of FLSA overtime provision but did not investigate or consult an attorney to find out if arrangement with employees was legal).

Here, VSI and Allred claim that their violation was not willful because they thought that LPNs, including the plaintiffs, were independent contractors, not employees.  They argue that this belief was justified because they consulted an attorney to draft Independent Contractor

---

[4] Whether an FLSA violation was willful can be decided by courts as a matter of law or by a jury if the issue is not appropriate for summary judgment.  *Compare Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 472 (6th Cir. 1999) (deciding willfulness issue on summary judgment); *Crouch*, 2009 U.S. Dist. LEXIS 103832, at \*74-76 (same), *and Wilson*, 2008 U.S. Dist. LEXIS 59623, at \*62 (same), *with Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 842-45 (6th Cir. 2002) (upholding jury determination of willfulness), *and Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 423 (6th Cir. 1999) (same).

18

Agreements, which the plaintiffs signed. Unlike the defendant in *Reich*, VSI based its misclassification on the counsel of an attorney and on forms signed by the plaintiffs stating that they were independent contractors. Furthermore, VSI and Allred point to the fact that a 2008 DOL investigation found violations in only seven of VSI's nearly 400 employees, and all of these were found to be non-willful. Because there is a genuine issue of material fact regarding whether VSI and Allred committed a willful violation of the FLSA, summary judgment is inappropriate here.[5]

**C.      Home Health Care of Middle Tennessee and Baley Allred III**

HHC argues that it should not be liable to the plaintiffs because it was not their employer under the FLSA. (Docket No. 68 at 2-4.)

As previously discussed, the economic realities test controls this determination, so the court will examine whether the alleged employer had the power to hire and fire the employee, supervised and controlled the employee's schedule and conditions of employment, determined the rate and method of payment, and maintained employment records.[6]  *Larson*, 2010 U.S. Dist.

---

[5] The plaintiffs also argue that VSI and Allred should not be allowed to rely on their own interrogatory answers as evidence in response to a motion for summary judgment. (Docket No. 70 at 4.) VSI and Allred do cite interrogatory answers that elaborate on the arguments from their reply brief, (*Id.*, Ex. 2), but this issue is irrelevant, because the plaintiffs have failed to discharge their burden of proving willfulness. Additionally, even excluding their interrogatory answers, VSI and Allred have provided the DOL's investigation and findings (*Id.*, Ex. 1), letters from their attorney, and the ICAs (*Id.*, Ex. 3).

[6] In situations involving multiple alleged employers, courts have also framed the issue as one of "joint employment" and considered similar factors. *See Hulett v. America's Finest Serv. Co.*, No. 1:03 CV 2497, 2005 U.S. Dist. LEXIS 41952, at *34-35 (N.D. Ohio Sept. 14, 2005) (considering authority to hire, control over conditions of employment and work assignments, and day-to-day supervision in determining whether defendant was a joint employer).

19

LEXIS 30129, at *22 (citing *Cole Enters.*, 62 F.3d at 778). Furthermore, in *Crouch*, the court denied the employees' motion for summary judgment as to one employer's joint liability but suggested that, if it were a sham corporation set up to avoid paying overtime, or if it had any control over pay, scheduling, or job description, then it might be liable. 2009 U.S. Dist. LEXIS 103832, at *70.

Here, the plaintiffs do not provide any evidence suggesting that HHC was a sham corporation or had the power to hire or fire the LPNs, control their schedule, or determine their rate of pay. However, there is no magic number of factors that must be perfectly satisfied. Rather, each factor helps the court determine the economic reality of the relationship based on the totality of the circumstances in each unique set of facts. *See Greene*, 2009 U.S. Dist. LEXIS 40388, at *36-38.

It is undisputed that HHC maintained personnel files on the plaintiffs, and the record also suggests that HHC might have exercised some degree of control over the plaintiffs' job description and conditions of employment. For example, the plaintiffs point to the fact that HHC required them to meet certain proficiency requirements and record patient status updates on forms provided by HHC. Additionally, the record indicates that it was HHC's policy to obtain documents from the nurses whom AHS hired, including a signed receipt of job description, a signed receipt of HHC's Employee Handbook, and a signed receipt of HHC's drug policy. These measures suggest that HHC may have played a significant enough role in the plaintiffs' employment to be considered an employer, especially "in light of the remedial purposes of the FLSA." *Dole*, 942 F.2d at 965.

But the spotty factual record prevents the court from definitively determining that HHC

20

was an employer.  The plaintiffs have not submitted the Employee Handbook or the job descriptions that HHC distributed, and the record is devoid of any details regarding those documents.  Instead, the plaintiffs have simply provided a form containing HHC's checklist of hiring requirements, which include the signed receipt of the Employee Handbook and job description.  The form indicates, however, that none of the plaintiffs actually signed the Employee Handbook receipt and that plaintiff Peggy McComas did not even sign HHC's job description.  (Docket No. 62 Ex. 5 at 1-3.)  Thus, there is no evidence detailing the extent of HHC's hiring requirements or how those requirements applied to the plaintiffs.

Furthermore, nothing in the record indicates whether HHC could initiate discipline if the plaintiffs failed to adhere to HHC's undefined policies, failed to complete the patient status update forms, or did not provide proper care to HHC's patients.  The parties also dispute whether HHC kept records of the plaintiffs' hours.  (Docket No. 69 at 4.)  Because the court must draw all factual inferences in favor of HHC, summary judgment as to HHC is inappropriate.  *See Wilson*, 2008 U.S. Dist. LEXIS 59623, at *55-56 (denying summary judgment as to one defendant because question of whether he was an employer raised genuine issue of material fact).

Finally, the plaintiffs argue that Allred is personally liable for HHC's actions.  As previously discussed, "a corporate officer who has operational control of the corporation's covered enterprise is an 'employer' under [the] FLSA, along with the corporation itself." *Cole Enters.*, 62 F.3d at 778.  "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Henry v. Quicken Loans Inc.*, No. 4:04-CV-40346, 2008 U.S. Dist. LEXIS 112329, at *8 (E.D. Mich. Aug. 22, 2008).   "A significant ownership interest in the corporation has been a factor in

21

determining 'employer' status, but has never been considered dispositive." *Id.* at *20.

First, the plaintiffs have not sufficiently shown that HHC was their employer, so there is no basis for Allred's derivative liability. Second, even though Allred owns 50% of HHC, the plaintiffs have not put forth any evidence suggesting that he had operational control of the company or that he supervised the plaintiffs. Rather, they rely on Allred's admission that he was an employer based on his role as part-owner of VSI. But Allred's potential liability stemming from VSI is a separate issue; operational control of VSI does not necessarily imply control of HHC.

Consequently, the Motion for Summary Judgment against HHC and Baley Allred will be denied.

## **CONCLUSION**

For the reasons discussed above, the court will grant in part and deny in part the plaintiffs' Motion for Summary Judgment. The plaintiffs are entitled to summary judgment on their claims against AHS and Mickey and Gia Ruggiero. They are not entitled to summary judgment against VSI, HHC, and Baley Allred, because questions of fact exist as to whether VSI and Allred's violation of the FLSA was willful, whether HHC was the plaintiffs' employer, and, if HHC was the plaintiffs' employer, whether Allred had operational control of HHC.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

22